## Case No. 3,735.

DEELY et al. v. The ERNEST & ALICE.

[2 Hughes, 70;[1] 1 Balt. Law Trans. 12.]

District Court, D. Maryland.  Oct. Term, 1868.

ADMIRALTY JURISDICTION—MORTGAGES—FREIGHT.

Admiralty has no jurisdiction to enforce a mortgage upon a vessel where the mortgagee is out of possession, nor to enforce the payment of freight to the mortgagee.

[Cited in The Ella J. Slaymaker, 28 Fed. 768.]

This case was argued at its different stages, having been twice heard, first upon the plea of jurisdiction, and afterwards upon the merits, by Messrs. Wallis and Thomas for libellants, and by Messrs. Thomas W. Hall, Jr., Wm. Fell Giles, Jr., and John S. Hanan, for respondents.  The libel alleges that libellants being owners of the said vessel, in the month of June, 1868, caused a cargo of guano, the property of the libellants, to be shipped on board thereof, at Alta Vela, in the island of St. Domingo, to be transported as their property and on their account, to this port; that said vessel had arrived in this port with said cargo on board, but that the captain of said vessel had issued bills of lading therefor in favor of some other person, who has no claim or title to said cargo, with whom the captain has fraudulently combined to deprive the libellants of the said property; and also that said captain refused to surrender said vessel to libellants, and it prayed for a decree that the possession of said vessel and cargo be immediately delivered to said libellants.  This libel was filed on the 6th of July, 1868, and on the 5th of October, 1868, an amended and supplementary libel was filed, in which it is alleged that libellants furnished to Theodore Gomez the means necessary to defray the expense of shipping on their account and as their property this cargo,

[1] [Reported by Hon. Robert W. Hughes, District Judge, and nere reprinted by permission.]

and that said cargo was paid for and put on board said brig with the means so furnished by libellants, and that Gomez promised and agreed to ship said cargo as their property; but since the original libel was filed the libellants have learned that said Gomez fraudulently combined with Francis Jouanin, the claimant of said cargo, to ship the same professedly as his, and that said Jouanin has no interest in said cargo, and it concludes with a prayer for a decree for possession. But if it shall appear to the court that said cargo ought not, in these proceedings, to be treated as the property of libellants, they pray that they may be allowed such freight for the transportation of the same as to the court may seem equitable and proper. Such is the case of the libellants as stated in the pleadings. On the 25th of July, 1868, a claim was filed by Francis Jouanin, of the city of Paris, France, in which it is alleged that Theodore Gomez, of the island of St. Domingo, is the true and lawful owner of the said vessel, and the said cargo of guano is the property of him, the said Francis Jouanin. This claim is sworn to by the said Jouanin, and on the 29th of August, 1868, the proctors for said claimant filed a plea to the jurisdiction of this court which, upon argument, was overruled by the court; the court holding that while it was not obligatory upon the courts of this country to enforce contracts or settle disputes between the subjects of foreign governments not residents of this country, but their action in each case rested in the discretion of the court, yet, that where it was a proceeding in rem, and the vessel was here, the court would entertain the jurisdiction if it appeared that otherwise there would be a failure of justice. After this decision, on the 26th of September, 1868, the claimant filed his answer, in which he denies the allegations of the libel in reference to the ownership of vessel and cargo, and states at large the facts and circumstances attending the transfer of the vessel by Gomez to libellants, which he, the claimant, asserts conveyed the vessel to libellants only as mortgagees to secure to them the amount due by Gomez upon a settlement of their mutual transactions; and, as to the cargo, the answer states that the same was purchased by Gomez, in the month of May last, and placed on board the said vessel, and was sold for a valuable consideration by Gomez to said claimant, on the 27th of May, 1868, at the city of St. Domingo, and that on that day he chartered the said vessel for the sum of two thousand dollars for the round trip from St. Domingo to this port and back, and the bills of lading for said cargo were made to him as the true and lawful owner of said cargo; and he denies all fraudulent combination, as charged in the amended libel.

GILES, District Judge.  It will be perceived from these pleadings that there are

two issues to be decided by this court. First. Who is the owner of this vessel, or who is entitled to her present possession? Second. Who is the owner of this cargo? And in reference to both these issues a variety of evidence has been offered, both documentary and by parole. I have duly and carefully considered it all, and, to my mind, it establishes the following facts:

That in the spring of 1867, Theodore Gomez purchased at public sale, in the island of St. Thomas, the vessel now in controversy in this case. She was then in a damaged condition, and has been built in Spain, and known as the Spanish ship Immaculada. Gomez repaired her, and on the 24th of July, 1867, made a bill of sale of her to Benjamin Lobo, a British subject, residing in St. Thomas, in which the consideration is recited to be $10,000; but no consideration passed between said parties, said bill of sale being made to said Lobo for the purpose of obtaining from the British consul at St. Thomas a provisional certificate for said vessel, and placing her under the British flag. This course was no doubt pursued by Gomez to save her from capture and condemnation by some of the revolutionary parties in St. Domingo, of which island he was a citizen. Lobo was a clerk in the house of Jno. Newton & Co., of St. Thomas, the principal of which firm was a partner in the house of William Deely & Co., Liverpool, and is one of the libellants in this case. So that said Newton was fully aware of the change in the character of the vessel. I find this from the fact that Lobo was a clerk in his house at St. Thomas. and on the 3d of August, 1867, a letter is written in the name of Newton by Lobo, in which occurs this passage: "I have taken out a sea-pass in B. Lobo's name here, and on her arrival in England I shall get her a regular register." On the trial of this case this letter was shown to Mr. Newton when on the stand as a witness, and was identified by him. And further, that the vessel was about to load with a cargo for Liverpool, consigned to his house, and did so load and proceed to Liverpool. The vessel arrived at Liverpool about the 17th of December, 1867, with a cargo of log and other wood, consigned to libellants. On the 1st of October, 1867, Lobo had reconveyed the vessel to Gomez, and in the bill of sale executed by him the same consideration of $10,000 as stated in the one by Gomez to him, is recited. Gomez was then in Liverpool, and being without funds applied to libellants, who agreed to make advances for the supplies and expenses of said vessel upon a pledge of the same; and Gomez executed the bill of sale and agreement of the 30th December, 1867, and all the expenses of said vessel at Liverpool were paid by the libellants, and the sum so paid, with cargo furnished to said vessel on her return trip, amounted to the sum of £500 sterling, as stated in said agreement. That agree-

ment contained a provision looking to the furnishing by libellants of further cargo for said vessel, but what additional amount beyond that included in the £500 was so furnished I cannot find from the evidence. Neither have I been furnished with any account of sales of the cargo carried to Liverpool by the Ernest and Alice or by the Isla, which was subsequently loaded and sent by Gomez to libellants. The true amount of indebtedness of Gomez to libellants can only be ascertained when these accounts are furnished. It is alleged in the answer that these sales will cover all sums advanced by libellants, but this is denied by Newton, and as it appeared by the letter of libellants of the 1st of July, 1868, that the bulk of the mahogany brought by the Ernest and Alice was still unsold, that indebtedness, if any, cannot be now ascertained. The Ernest and Alice, with Gomez on board, proceeded from Liverpool to St. Domingo, and in April went to the island of Alta Vela, where she took on board a cargo of guano, purchased and paid for by Gomez, and returned with it to St. Domingo. I find this from the agreement for its purchase by Gomez from the agent of the house of Don Joakin Comas, given in evidence, and the evidence of Captain Toulberg, that Gomez paid for it. That at that port the captain of the vessel executed and delivered to the claimant Jouanin the charter-party and bill of lading given in evidence in this case, to whom Gomez had sold the guano in the city of St. Domingo. I find the last-mentioned fact because the claimant has sworn to it and so represented it to the consignee when he arrived, and it is in accordance with the bills of lading; while to deny it, we have only the admissions understood to have been made by the claimant, a foreigner, not speaking our language, and when, from the fact that as regards the principal subject of dispute (the vessel) he was acting only as the agent of Gomez, under a power of attorney. The evidence further shows that after the vessel arrived in St. Domingo, one of the libellants, John Newton, who had arrived in St. Thomas, entered into a new arrangement with Gomez, by which the vessel, instead of being sold, was to proceed to Alta Vela for a cargo of guano, to be carried to this port for and on account of the libellants, as appears by Newton's letter to Gomez of 5th June, 1868, and that he, Newton, to furnish the means to pay for said cargo, gave to Gomez a draft on a house in the West Indies for $250, and authorized him to use the bricks (part of the cargo brought from Liverpool by the said vessel), but there was no evidence that said draft had been paid, and said bricks had already been charged to said Gomez by libellants in their account current of 14th February, 1868.

It is on these facts that I am called upon by the libellants to deliver to them the possession of this vessel and her cargo. Their right to invoke the aid of this court to give them the

possession of this vessel presents a question of some difficulty; and, to solve it, we must first ascertain the character of the papers executed by Gomez on the 30th December, 1867. Did they convey to libellants an absolute legal title or only a mortgage interest? The two papers of that date must be construed together, as if they had formed but one instrument; for, separated, the bill of sale could convey no interest in said vessel to libellants, being void for want of consideration and not under seal. Looking, then, at the two papers, the bill of sale and agreement, it is perfectly clear that Gomez conveyed the said vessel to libellants to secure to them, or to their agents, Messrs. John Newton & Co., the payment of the sum of £500 sterling on or before the 15th March, 1868; and, if said sum was not paid, Gomez agreed that after he had discharged her cargo in St. Domingo, he would proceed to St. Thomas and place the vessel in the hands of John Newton & Co. for sale, in order that out of the proceeds the libellants might be paid the amount mentioned in said agreement. Being then a mortgage, are there any circumstances surrounding these transactions which would take this case out of the general rule which denies to this court any jurisdiction to enforce the rights of mortgage? Now, the learned proctor for the libellants, in his closing argument, contended that the title of libellants under the bill of sale and agreement of the 30th December, 1867, had been consummated by possession. But this theory is inconsistent with the provisions of the agreement itself, and is contradicted by the correspondence of the parties and other evidence. It is true that John Newton, one of the libellants, when on the stand, spoke of the vessel as purchased by libellants from Gomez, and said they controlled her and gave written instructions to her captain, etc.; yet he says in his letter to Gomez of the 8th May, 1868: "I have written to Lobo for a declaration of ownership, and as soon as I am in receipt of it, and the Ernest and Alice has arrived, will send it on to you; and I hope you will soon be able to change the flag of the ship and do a good trade with her." So the letters of William Deely & Co., of the 1st and 15th February, 1868, evidently treat the vessel as the property of Gomez. I have said nothing of the bill of sale to libellants from Lobo of the 25th June, 1868, for I consider it as transferring no title whatever to the libellants. At the time of its execution, Lobo had no title of any kind to the vessel, as he had conveyed back to Gomez whatever title he had acquired from him by the bill of sale of the 24th of July, 1867, and the provisional certificate issued to him the 29th of July, 1867, had expired, and had been surrendered in Liverpool. Then regarding libellants as mortgagees out of possession, have I any authority to deliver to them the possession of this vessel? Now, a possessory suit is one which seeks to restore to the owner the possession of which he has

been unjustly deprived, when that possession has followed a legal title.

The question here occurs, have libellants therein any legal title to the vessel? As their purchase, if any, was made at Liverpool, England, its validity will depend upon the requirement of the merchant shipping act of Great Britain (passed in 1854) in reference to the sale and transfer of vessels. These requirements will be found in the 55th, 56th, 57th, 58th, and 81st sections of said act. With some of these requirements the bill of sale from Gomez to libellants does not comply; and the same may be said of the bills of sale from Gomez to Lobo, and from Lobo back to Gomez. But it is unnecessary for me to pursue this inquiry as to the form of the bill of sale further, as I place my decision of the case upon other grounds. Then, as to the character of the transfer from Gomez to Lobo, and the obtaining of the provisional certificate for this vessel in the name of Lobo, a British subject. By the merchant shipping act of Great Britain (passed in 1854), no ship shall be deemed a British ship unless she belongs wholly either to natural born British subjects or to persons made denizens by law, or to bodies corporate, established under the laws of the kingdom. Now we have seen from an examination of the facts of the case that Lobo was not the owner of the vessel, but that she belonged to Gomez, and that Lobo's name was used for the purpose of placing her under the protection of the British flag. And that this was known to libellants, appears not only from the letter of Newton, per Lobo, his clerk, to which I have before alluded, but from the fact that under the provisional certificate thus obtained the vessel went to Liverpool consigned to libellants, and that while in that port libellants treated with Gomez as the true and real owner; and again, from the further fact that they cleared her from that port as a British vessel, although her provisional certificate had expired, and she had not been registered as required by the laws of Great Britain. Now, was not the whole transaction a fraud upon the navigation laws of Great Britain? and being clearly so, the court will not lend its aid to enforce a title thus tainted. This disposes again upon another ground of the title claimed through Lobo. But I place my decision in this case upon the fact that this conveyance to libellants by Gomez conveyed to them only a mortgage interest, as I have before shown. Indeed, if the bill of sale had been absolute, and it was proved to the satisfaction of the court that it had only been given as security for money advanced, the result would be the same, as has been lately decided in England in the case of The Innisfallen, Eng. Adm. 1866 [L. R. 1 Adm. & Ecc.] 72. This court has no jurisdiction to enforce the provisions of such a transaction. In the case of Bogart v. The John Jay, 17 How. [58 U. S.] 402, the supreme court say "that the mortgage of a ship has nothing

maritime in it, and a failure to perform such a contract cannot make it maritime." And that the courts of admiralty have therefore never taken jurisdiction of such a contract to enforce its payment, or by a possessory action to try the title or a right to the possession of the ship. This disposes of the first and most important part of the case. Now, as to the cargo, the testimony is conflicting, and the preponderance of evidence seems to be with the claimants, as I have before stated. The burden of proof was on the libellants, and if they have failed to satisfy the court that the cargo was theirs, they cannot receive its aid to gain the possession of it. I do not wish it, however, to be understood that if the proof of ownership had been clear, this court would have jurisdiction to decree the possession of a cargo situated as this was, on board a vessel moored to the wharf in this port, and both vessel and cargo regularly entered at the custom-house. This point was made by the learned proctor for the claimant who opened the argument on that side; but I have not fully examined it, and as I place my decision upon the failure of proof as to the cargo, I shall not give any opinion upon it in this case.

The only remaining question is, as to the freight. If I am right in the view I have taken of the character of the transactions between Gomez and the libellants, that they are mortgagees out of possession, they cannot recover freight. While they remain such, they are neither liable for any of the expenses incurred by or entitled to the freight earned by the vessel. The point is decided in Gardner v. Cazenove, 1 Hurl. & N. 423; Chinnery v. Blackburne, 1 H. Bl. 117, note; Brancker v. Molyneux, 3 Scott, N. R. 334. It is true that the evidence shows that Gomez has not kept his promise and engagement to ship a cargo of guano at Alta Vela, and transport the same in the Ernest and Alice to this port for and as the property of libellants, or as the property of John Newton. But the court has no jurisdiction to decree the specific performance of a contract. For this principle see the following cases: Andrews v. Essex Fire Ins. Co. [Case No. 374]; Kynoch v. The S. C. Ives [Id. 7,958]; Davis v. Child [Id. 3,628]; Alberti v. The Virginia [Id. 141]. I will therefore sign a decree dismissing the libel filed in this case with costs.